Thomas A. Runk (SBN 101306)
trunk@brookskushman.com
**BROOKS KUSHMAN P.C.**
515 S. Flower Street, Suite 1800
Los Angeles, CA  90071-2231
Tel.: (562) 708-3520

Christopher C. Smith (SBN 238882)
csmith@brookskushman.com
**BROOKS KUSHMAN P.C.**
150 W. Second St., Suite 400N
Royal Oak, MI  48067-3846
Telephone: 248-358-4400

*Attorneys for Hatch Baby, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| **HATCH BABY, INC.**<br><br>                    Plaintiff,<br><br>    v.<br><br>**ILOVEHUE, LLC, and**<br><br>**MASON RUPPER**<br><br>                    Defendants. | Case No. 26-1370<br><br>**COMPLAINT AND JURY DEMAND FOR**<br>(1) INFRINGEMENT OF U.S. PATENT NO. D1,060,799<br>(2) TRADE DRESS INFRINGEMENT<br>(3) INFRINGEMENT OF U.S. PATENT NO. 12,193,833<br>(4) FEDERAL TRADEMARK INFRINGEMENT<br>(5) FEDERAL UNFAIR COMPETITION<br>(6) UNFAIR COMPETITION UNDER THE COMMON LAW OF CALIFORNIA<br>(7) CALIFORNIA STATUTORY UNFAIR COMPETITION<br>(8) UNJUST ENRICHMENT |

Plaintiff Hatch Baby, Inc. ("Hatch" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against ilovehue, LLC ("ilovehue") and Mason Rupper ("Rupper") (collectively, "Defendants"), states as follows:

## I.    THE PARTIES

1.    Hatch is a Delaware corporation, with its principal place of business at 3790 El Camino Real, Unit 627 Palo Alto, CA 94306.

2.    On information and belief, ilovehue is a Wyoming limited liability company. However, on information and belief, ilovehue's primary place of operation is in Los Angeles, California, where ilovehue holds itself out as a Los Angeles-based company, conducts business activities, directs sales and marketing efforts, manages vendor and retailer relationships, and from which Rupper operates and controls ilovehue's day-to-day affairs.[1]



(ilovehue website as of February 8, 2026)

---

[1] https://ilovehue.store/pages/about?srsltid=AfmBOoqObGrbfxQkw20wYGckU9vDSJQNo3HW PM4NZAcem35ZkRH00oNd,.

Complaint & Jury Demand

3.      ilovehue lists Wyoming Registered Agent as its registered agent for ilovehue with a physical office address at 1621 Central Avenue, Cheyenne, WY 82001. ilovehue further lists this same address as its "Principal Office" and "Mailing Address." (Exhibit 1). However, this location does not appear to conduct any business associated with ilovehue and appears to be a location for a government building in Wyoming (see map below).[2][3]



4.      On information and belief, this address serves solely as ilovehue's registered office, and ilovehue does not conduct substantive business operations from that location.

5.      On information and belief, Rupper is an individual residing at 16300 Ventura Blvd., Apt. 315, Encino, CA 91436.

6.      On information and belief, Rupper is ilovehue's sole or primary owner and exercises exclusive control over its operations.

---

[2] https://www.wyomingregisteredagent.com/contact-us/

[3] https://www.google.com/maps/place/1621+Central+Ave,+Cheyenne,+WY+82001/@41.1403433,-104.8205142,19.5z/data=!4m6!3m5!1s0x876f3aeb63cc8dd5:0x30f87ad2ddd8225!8m2!3d41.1402867!4d104.8202268!16s%2Fg%2F11xynxxy_7?entry=ttu&g_ep=EgoyMDI2MDIwNC4wIKXMDSoASAFQAw%3D%3D

Complaint & Jury Demand

7.      On information and belief, the acts and omissions alleged herein were undertaken by Rupper individually and/or through ilovehue, and were actions that Rupper caused to occur, authorized, controlled, directed, or had the ability to authorize, control, or direct, or in which he assisted, participated, or otherwise encouraged.

8.      On information and belief, Rupper exercises pervasive control over ilovehue and dominates its operations such that ilovehue operates as Rupper's alter ego.

9.      On information and belief, ilovehue acts at the direction of, and as the agent and instrumentality of, Rupper in connection with the conduct alleged herein. At all relevant times, Rupper has used ilovehue to carry out the wrongful acts alleged in this Complaint and has personally benefited therefrom.

10.     On information and belief, in performing the acts and omissions alleged herein, Rupper has acted directly and through ilovehue within the course and scope of this alter ego and agency relationship, and Rupper and ilovehue are therefore jointly and severally liable for the misconduct alleged herein.

## II.     JURISDICTION AND VENUE

11.     This case arises under the Patent Act, 35 U.S.C. § 1, et seq., and the Lanham Act, 15 U.S.C. § 1051, et seq.

12.     The Court has subject matter jurisdiction over this action pursuant to inter alia, 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (action arising under the Patent Act); and 15 U.S.C. § 1121(a) (action arising under the Lanham Act).

13.     On information and belief, Defendants offer for sale and sell the infringing alarm clock (the "Infringing Product") nationwide, including in this District, through its website ilovehue.store and Shopify.com thereby committing acts of infringement that subject Defendants to the jurisdiction of this Court.

14.     On information and belief, ilovehue was formed in Wyoming and thereafter

Complaint & Jury Demand

registered to conduct business in California. In its July 4, 2023, California Out-of-State LLC Registration, ilovehue identified a California principal office and designated Rupper as its agent for service of process, listing Rupper's address in Encino, California (Exhibit 2).

15.     On information and belief, on July 4, 2023, Rupper filed a Fictitious Business Name Statement in Los Angeles County identifying ilovehue's business address in Encino, California and listing Rupper as the business owner at that same address (Exhibit 3).

16.     On information and belief, in its April 27, 2024, California Statement of Information filing, ilovehue identifies Rupper as a manager or member with an Encino, California address (Exhibit 4).

17.     On information and belief, ilovehue represents to the public that it is located in Los Angeles, California, including through its Facebook page, where ilovehue identifies itself as a Los Angeles-based company. ilovehue makes these representations in connection with advertising and selling its products to consumers, including consumers in this District. By holding itself out as operating from Los Angeles and directing its commercial activities toward California, ilovehue has purposefully availed itself of the privilege of conducting business in this forum.

18.     Venue and personal jurisdiction are appropriate in this Court under 28 U.S.C. § 1400(b) because one or more Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims pleaded herein occurred in this District, and under 28 U.S.C. § 1391(b) because Defendants have committed acts of patent, trade dress, and trademark infringement in this District.

### III.     FACTUAL ALLEGATIONS

**Hatch's Business**

19.     The American system of free enterprise encourages and rewards creativity, innovation, investment and hard work. That system relies on fair competition, the bounds of which are protected by law and the Courts.

Complaint & Jury Demand

20.     Defendants violated these basic tenets of fair competition by trading on the goodwill that Hatch enjoys among the consuming public for its best-selling Hatch Restore Products. That goodwill exists as a result of Hatch's innovation, investment, marketing and hard work over many years.

21.     Hatch is a leading developer of sleep products, including its well-known line of alarm clocks and sound machines. Hatch owns valid and enforceable design and utility patents relating to its alarm clocks and sound machines. Hatch's products also feature a distinctive, non-functional trade dress that serves to identify Hatch as the source of the products.

22.     Hatch has made significant investments in the research, engineering, design, and development of its alarm clock products, including the ornamental appearance protected by its design patents, as well as in building strong customer recognition in its distinctive product appearance.

23.     Ann Crady Weiss is the Chief Executive Officer and co-founder of Hatch. Ms. Weiss and her husband, Hatch co-founder Dave Weiss, created Hatch to address unmet needs in sleep health after experiencing firsthand the challenges of infant sleep and adult insomnia.

24.     Ann's long nights awake with her first baby and Dave's ongoing struggles with insomnia sent them on a quest to make sleep easier, beginning with the Rest and Rest+ products and expanding to the Restore products. Featured on the series "Shark Tank" in 2016, Hatch has quickly grown into a recognized leader in sleep.

25.     Hatch's Restore Products include multiple models. The Restore Products are pictured below.

Complaint & Jury Demand



Complaint & Jury Demand

| HATCH'S RESTORE 2 | HATCH'S RESTORE 3 |
|---|---|
|  |  |
|  |  |

26.    Hatch sells its Restore Products through an online retail store at www.hatch.co as well as on Amazon.com (United States, Canada, Mexico, Brazil), Walmart.com, and MercadoLibre.com.

27.    Hatch's Restore Products are also sold in brick-and-mortar stores through distributors and major third-party retailers including Target, Best Buy, Nordstrom, Pottery Barn, Macy's, Bloomingdales, Kohl's, Saks Fifth Avenue, and Ulta Beauty.

28.    Hatch widely and prominently advertises its Restore Products in the marketplace, including online, television, print media, and social media.

29.    Currently, Hatch's social media accounts, which frequently promote the Restore designs, have over 226,000 followers on Instagram (https://www.instagram.com/hatchforsleep);

Complaint & Jury Demand

over 113,000 followers on TikTok (https://tiktok.com/@hatchforsleep); and over 40,000 followers on Facebook (https://www.facebook.com/hatchforsleep).

30.    For years, the Restore Products' design has received unsolicited third-party media attention that references the iconic design, as well as numerous industry awards and recognitions, including from publications such as Oprah Daily, Forbes Vetted, TIME, Men's Health, and NBC Select.

### Hatch's Patents

31.    Hatch has filed and been issued numerous patents to protect its valuable intellectual property in its Restore Products and Restore designs.

32.    Hatch is the owner of U.S. Design Patent No. D1,060,799 (the "'799 Patent") (Exhibit 5).  The '799 Patent is titled "NIGHTLIGHT," and was filed on May 25, 2023, and issued on February 4, 2025.

33.    Hatch is the owner of U.S. Patent No. 12,193,833 (the "'833 Patent") (Exhibit 6). The '833 Patent is titled "MULTI-FUNCTION DEVICE FOR IMPROVING SLEEP AND METHOD OF OPERATION THEREOF," and was filed on May 25, 2023, and issued on January 14, 2025.

### Hatch's Trademark and Trade Dress

34.    Hatch owns U.S. Trademark Registration No. 5,411,952 (the "'952 Registration") for the character mark REST® for use in connection with alarm clocks in International Classes 9, 11, and 14. The '952 Registration issued on February 27, 2018, and remains in full force and effect (hereinafter, "the Trademark") (Exhibit 7).

35.    The Hatch Restore Products have a unique and widely recognized shape and overall appearance.

36.    Specifically, as shown below, the front of the Hatch Restore Products includes a smooth, softly rounded, semi-arched silhouette with a flat base. Additionally, the face of the

Complaint & Jury Demand

Hatch Restore Products includes a textile fabric panel extending across a substantial portion of the visible front surface. The fabric is light-colored, neutral in tone, and woven with a subtle texture creating a crisscross pattern, creating a warm, domestic visual contrast with the surrounding housing.  The textile fabric panel includes a light gradient in which the bottom strip of the panel appears darker than the remainders of the semi-arched silhouette.

**Restore 3**



**Restore 2**



37.     As shown below, the side of the Hatch Restore Products comprises a smooth, gently arched silhouette that rises continuously from a flat base to a rounded upper contour, with no sharp edges or angular transitions.  The front surface of the Restore Products is larger than its back surface.

Complaint & Jury Demand

**Restore 3**



**Restore 2**



38.    As shown below, the back of the Hatch Restore Products includes a smooth, softly rounded, semi-arched silhouette with a flat base similar in shape to its front surface but smaller in size.

Complaint & Jury Demand

**Restore 3**



**Restore 2**



39.     Hatch maintains common law trade dress rights in this widely known and recognized shape and appearance of its Restore Products described above. (hereinafter "the Hatch Trade Dress").

40.     The Trademark and the Trade Dress are inherently distinctive, serving to identify and indicate the source of Hatch's alarm clocks to the consuming public, and to distinguish its products from those of others.

41.     The Trademark and the Trade Dress are non-functional and serve to identify

consumers that the origin of the product is Hatch.

42.     Additionally, and alternatively, because of Hatch's extensive usage and promotion over the years, the Trademark and the Trade Dress have become distinctive to designate Hatch's Restore Products, to distinguish Hatch's Restore Products from the products of others, and to distinguish the source or origin of Hatch's products.

43.     As a result, the Trademark and the Trade Dress have become well-known and widely recognized by consumers in the State of California and throughout the United States to indicate the source of Hatch's Restore Products.

44.     Consumers know and respect the Trademark and the Trade Dress as a symbol of quality, premium alarm clock sound machines.

45.     As a result of Hatch's extensive, continuous use and promotion of the Trademark and the Trade Dress in interstate commerce, Hatch has developed valuable goodwill and strong common law rights.

46.     As a result of Hatch's efforts, consumers have come to identify and recognize the Trademark and the Trade Dress as an indicator of the source of Hatch's Restore Products.

**Defendants' Infringing Activities**

47.     Defendants are in the business of distributing household products, including alarm clocks.

48.     Rather than create their own distinct product designs, Defendants recently introduced designs nearly identical to the iconic Restore designs and sell them throughout the United States, including in the State of California.

49.     Defendants introduced the Infringing Product shown below, which they have been selling on the ilovehue.store website and through Shopify.com.

Complaint & Jury Demand



50.    On information and belief, Defendants began marketing, offering for sale, and selling the Infringing Product between October 2025 and December 2025.

51.    To capitalize on Hatch's continued success in the marketplace, Defendants offer products that mimic Hatch's distinctive Restore designs and utilize its widely known and recognized shape.

52.    Defendants have advertised the Infringing Product on social media platforms, including Facebook and Instagram. In these advertisements, as shown below, Defendants reference Hatch's Restore Products both by name and price. For example, one advertisement depicts a screenshot of Hatch's Restore 3 and states, "Crying because I spent $180 on a stupid alarm when I could of [sic] got the same one for literally half the price." Another advertisement states, "Hi, I'm the ilovehue Rise and no, I don't cost $160."



53.     Defendants' advertisements are designed to draw direct comparisons to Hatch's Restore Products, highlight Hatch's well-known price point, and capitalize on Hatch's brand recognition.

54.     Defendants' advertisements were made in bad faith because the advertisements were intended to direct Hatch's existing and prospective customers away from Hatch's Restore Products and toward Defendants' own Infringing Product.

55.     Defendants' website even refers to their product line using Hatch's REST® trademark to classify their Infringing Products. Defendants refer to its page for the Infringing Product as "House of Rest."

Complaint & Jury Demand



56.    Defendants' Infringing Product is sold in the same or similar channels of trade as the Restore Products. Defendants' Infringing Product is advertised and sold throughout the United States on the Internet and distributed throughout the United States including throughout California.

57.    On information and belief, the Infringing Product does not have the same premium quality as the Hatch Restore designs.

58.    Defendants could have selected from or developed a virtually finite number of alternative designs, instead of the Infringing Product which would not be confusingly similar to Hatch's Restore designs.

59.    On information and belief, ilovehue's actions described herein, including all actions infringing Hatch's trade dress, trademark, and patents were authorized, controlled, and directed at all relevant times by Rupper, who derived economic benefit and profit from ilovehue's actions and infringements. Rupper is the moving, active, conscious force behind ilovehue's infringements of Hatch's patents, trade dress, and trademark.

60.    On information and belief, Rupper directly infringed Hatch's patents, trade dress, and trademark as alleged herein.

Complaint & Jury Demand

61.     On information and belief, Rupper personally advertised and offered for sale the Infringing Product, with knowledge that he was copying Hatch's Trademark and Trade Dress in advertising and offering for sale the Infringing Product.

62.     On information and belief, Rupper intentionally copied the look and feel of Hatch's Restore Products and the Hatch Trade Dress, with the effect that the Infringing Product appears to be a part of the same suite of products as the Restore Products.

63.     On information and belief, Rupper personally sourced and procured the Infringing Product from third-party overseas suppliers and coordinated their importation into the Central District of California and the United States, including by selecting and retaining shipping companies, transmitting shipping instructions and documentation to suppliers, providing shipment information to logistics providers, and directly authorizing and transmitting payments and deposits for international shipments.

64.     On information and belief, Rupper personally created and designed the advertising and marketing materials for the Infringing Product.

65.     On information and belief, Rupper set up the website at URL https://ilovehue.store/, the Instagram account https://www.instagram.com/ilovehuestore/?hl=en, the Facebook page https://www.facebook.com/ilovehuestore/, the TikTok page https://www.tiktok.com/@ilovehuestore, and other social media to advertise the Infringing Product.

66.     On information and belief, Rupper personally took photos of the Infringing Product, decided what photos of the Infringing Product will be displayed on the website and social media, and directly uploaded or caused third parties to upload such photos to the website and social media for public display on the Internet to advertise and market the Infringing Product to consumers.

67.     On information and belief Rupper personally profits from sales of the Infringing

Complaint & Jury Demand

Product.

68.     On December 12, 2025, counsel for Hatch sent Defendants a letter detailing Defendants' infringement of some of Hatch's design patent rights. The letter identified the Infringing Product and requested that Defendants discontinue sales of the Infringing Product.

69.     On December 13, 2025, Rupper, responded asserting the Infringing Product does not infringe the Hatch Design Patents-in-Suit.

70.     On December 18, 2025, counsel for Hatch responded, again identifying Defendants' continued infringing offerings, reiterating the encroachment upon Hatch's exclusive rights in the Restore designs, and renewing the request that Defendants discontinue sales of the Infringing Product.

71.     On December 19, 2025, Rupper responded again, denying infringement and refusing to cease sales of the Infringing Product.

72.     As a result of Defendants' continued infringement and repeated failures to address Hatch's concerns, Hatch has been left with no choice but to file this action to protect its valuable intellectual property rights, preserve the integrity of its designs, and prevent further harm to its business and reputation.

### IV.    COUNT I – INFRINGEMENT OF U.S. PATENT NO. D1,060,799

73.     Plaintiff incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

74.     Defendants have infringed and continue to infringe the '799 Patent by, inter alia, making, using, importing, offering to sell, or selling in the United States, including the State of California, products infringing the ornamental design covered by the '799 Patent in violation of 35 U.S.C. § 271(a).

75.     A comparison of Figures 1, 2, 5, 6, and 7 of the '799 Patent and the Infringing Product offered for sale by Defendants is shown below.

Complaint & Jury Demand



| D1,060,799 Patent | Defendants' Infringing Product |
|---|---|
| FIG. 1 | |
| FIG. 2 | |
| FIG. 5 | |

Complaint & Jury Demand

| D1,060,799 Patent | Defendants' Infringing Product |
|---|---|
| <br>FIG. 6 |  |
| <br>FIG. 7 |  |

76.     Hatch is entitled to a complete accounting of all revenue and profits derived by Defendants from the unlawful conduct alleged herein, including without limitation, Hatch's damages pursuant to 35 U.S.C. § 284 and/or Defendants' total profit pursuant to 35 U.S.C. § 289.

77.     Defendants have engaged and are engaged in willful and deliberate infringement of the '799 patent as described above. Such willful and deliberate infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and further qualifies this action as an exceptional case supporting an award of reasonable attorney's fees pursuant to 35 U.S.C. § 285.

Complaint & Jury Demand

78.    Defendants have caused irreparable harm to Hatch, its designs, its reputation, and its business. Hatch is entitled to a permanent injunction preventing Defendants from further infringing the '799 Patent.

## V.    COUNT II – TRADE DRESS INFRINGEMENT

79.    Plaintiff incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

80.    The acts of Defendants complained of herein constitute trade dress infringement in violation of 15 U.S.C. § 1125(a). Defendants' use of the Hatch Trade Dress and/or reproductions, counterfeits, copies, or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Hatch and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Hatch.

81.    A comparison of that Hatch Trade Dress and Defendants' Infringing Product, as offered for sale by Defendants is shown below.



| Hatch Trade Dress | Defendants' Infringing Product |

Complaint & Jury Demand











Complaint & Jury Demand





82.    The Hatch Trade Dress is entitled to protection under the Lanham Act. The Hatch Trade Dress includes unique, inherently distinctive and non-functional designs. Hatch has extensively and continuously promoted and used its Trade Dress in commerce in the United States. Through that extensive and continuous use, Hatch's Trade Dress has become a well-known indicator of the origin and quality of Hatch's alarm clock products. The Hatch Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, the Hatch Trade Dress acquired this secondary meaning before Defendants commenced its unlawful use of the Hatch Trade Dress in connection with the infringing products.

Complaint & Jury Demand

83.     Hatch has been damaged by Defendants' unlawful use of Hatch's Trade Dress and, unless enjoined, Defendants' unlawful use of Hatch's Trade Dress will continue to cause substantial and irreparable injury to Hatch for which Hatch has no adequate remedy at law. The injury to Hatch includes at least substantial and irreparable injury to the goodwill and reputation for quality associated with Hatch, Hatch's Trade Dress, and Hatch's alarm clock products.

84.     Defendants' use of Hatch's Trade Dress has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the infringing product design to Hatch's Trade Dress, as demonstrated above, *see for example* paragraph 81.

85.     Hatch is entitled to injunctive relief, and Hatch is entitled to recover at least Defendants' profits, Hatch's actual damages, enhanced damages/profits, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

86.     In view of the nature of Defendants' acts in violation of 15 U.S.C. § 1125(a) complained of herein, and/or Defendants' willfulness and bad faith, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## VI.     COUNT III –INFRINGEMENT OF U.S. PATENT NO. 12,193,833

87.     Plaintiff incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

88.     Hatch owns all rights, title, and interest in U.S. Patent No. 12,193,833, titled "Multi-Function Device for Improving Sleep and Method of Operating Thereof," which issued on January 14, 2025 (the "'833 Patent"). A true and correct copy of the '833 Patent is attached (Exhibit 6).

89.     On information and belief, Defendants make, use, offers for sale, sells, and/or imports alarm clocks, such as the Infringing Product, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '833 Patent.

90.     The infringement of the '833 Patent is also attributable to Defendants. Defendants

Complaint & Jury Demand

(and/or users of the Infringing Product) directs and controls use of the Infringing Product to perform acts that result in infringement of the '833 Patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

91.    Defendants also knowingly and intentionally induce infringement of claims of the '833 Patent in violation of 35 U.S.C. § 271(b). Defendants have had knowledge of the '833 Patent and the infringing nature of the Infringing Product at least as early as when this Complaint was filed. Despite this knowledge of the '833 Patent, Defendants continue to actively encourage and instruct its customers and end users to use the Infringing Product in ways that directly infringe the '833 Patent. Defendants do so knowingly and intend that its customers and end users will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Infringing Product, despite its knowledge of the '833 Patent, thereby specifically intending for and inducing its customers to infringe the '833 Patent through its customers' normal and customary use of the Infringing Product.

92.    The Infringing Product satisfies all limitations of at least claim 10 of the '833 Patent. A claim chart comparing independent Claim 10 of the '833 Patent to a representative Infringing Product is attached as Exhibit 8.

93.    By making, using, offering for sale, selling and/or importing into the United States the Infringing Product, Defendants have injured Hatch and are liable for infringement of the '833 Patent pursuant to 35 U.S.C. § 271.

94.    As a result of Defendants' infringement of the '833 Patent, Hatch is entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made by the invention by Defendants, together with interest and costs as fixed by the Court.

## VII.    COUNT IV – FEDERAL TRADEMARK INFRINGEMENT

95.    Plaintiff incorporates and realleges, as if fully set forth in this paragraph, the

Complaint & Jury Demand

allegations of the foregoing paragraphs.

96.    The acts of Defendants complained of herein constitute trademark infringement, use in commerce of a reproduction, counterfeit, copy, or colorable imitation of Hatch's federally registered trademark (U.S. Registration No. 5,411,952) on or in connection with the sale, offering for sale, distribution, or advertising of goods or services in violation of 15 U.S.C. § 1114(1).

97.    Hatch has been damaged by Defendants' acts in violation of 15 U.S.C. § 1114(1). Hatch is entitled to injunctive relief, and Hatch is entitled to recover at least Defendants' profits, Hatch's actual damages, enhanced damages/profits, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1116, and 1117.

98.    In view of the nature of Defendants' acts in violation of 15 U.S.C. § 1114(1) complained of herein, and/or Defendants' willfulness and bad faith, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## VIII.   COUNT V – FEDERAL UNFAIR COMPETITION

99.    Plaintiff incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

100.    Defendants have used and continue to use Hatch's Trade Dress in commerce, or counterfeits, reproductions, copies, or colorable imitations thereof.

101.    The acts of Defendants complained of herein constitute trade dress infringement, false designation of origin, false or misleading descriptions or representations of fact on or in connection with goods or services, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

102.    Hatch has been damaged by Defendants' acts in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) complained of herein.

103.    The nature of Defendants' acts in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) complained of herein and/or Defendants' willfulness and bad faith, make

25

this an exceptional case under 15 U.S.C. § 1117.

## IX.   COUNT VI – UNFAIR COMPETITION UNDER THE COMMON LAW OF CALIFORNIA

104.   Plaintiff incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

105.   The acts of Defendants complained of herein constitute trade dress infringement, trademark infringement, false designations of origin, false advertising, and other unfair competition in violation of California common law.

106.   Hatch has been and continues to be damaged by Defendants' conduct in an amount to be determined at trial.

107.   On information and belief, Defendants' conduct is willful, deliberate, intentional, and in bad faith.

108.   By reason of the foregoing acts, Defendants have caused, and unless enjoined will continue to cause, irreparable harm to Hatch. Hatch has no adequate remedy at law to address these injuries.

## X.   COUNT VII – UNFAIR COMPETITION UNDER Cal. Bus. & Prof. Code. § 17200, *et. seq.*

109.   Plaintiff incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

110.   Defendants' conduct is likely to cause confusion among consumers and the trade as to the origin, authorization, authenticity, and sponsorship of the products that Defendants advertise, distribute, offer for sale, and sell. Defendants have acted in this way because they intend to produce, and likely have produced, substantial profits for themselves at Plaintiff's expense and to the detriment of the integrity of Plaintiff's brand. Defendants' unfair competition includes, without limitation, representing in advertising and marketing materials that Hatch is owned or

controlled by Defendants, causing confusion among dealers and consumers of Hatch's products.

111.    As a result, Plaintiff has incurred damages, which includes loss of market share, injury to business reputation, loss of control over its brand and image, and lost sales and royalties.

112.    Defendants' conduct, as described, constitutes unlawful, unfair, and fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. Plaintiff has suffered substantial injury as a result of Defendants' wrongful acts. Defendants' misconduct has also caused, and continues to cause irreparable injury to Hatch for which there is no adequate remedy at law. Plaintiff seeks an injunction.

113.    Hatch has been and continues to be damaged by Defendants' conduct in an amount to be determined at trial. Defendants have knowingly and continually use Hatch's trademarks without Hatch's consent or authorization; this entitles Hatch to injunctive relief under Cal. Bus. & Prof. Code § 17200, *et seq*.

## XI.    COUNT VIII – UNJUST ENRICHMENT

114.    Plaintiff incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

115.    Defendants have been and continue to be unjustly enriched at the expense of Hatch by Defendants' acts complained of herein.

116.    Defendants have accepted and retained the benefit of the unjust enrichment from its wrongful conduct.

117.    There is no express, written contract between Plaintiff and Defendants that would allow for Defendants to retain the benefit of the unjust enrichment from its wrongful conduct as described herein.

118.    Hatch is entitled to recover from Defendants their unjust enrichment including gains, profits, and advantages obtained as a result of its wrongful conduct. Hatch is, at present,

Complaint & Jury Demand

unable to ascertain the full extent of the gains, profits, and advantages Defendants have obtained by reason of their wrongful conduct.

119.    Hatch has been and continues to be damaged by Defendants' conduct in an amount to be determined at trial.

## JURY DEMAND

1.    Plaintiff demands a jury trial in accordance with Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

2.    WHEREFORE, Plaintiff respectfully requests the following relief:

1.    A judgment that Defendants infringed the '799 Patent;

2.    A judgment that Defendants infringed the '833 Patent;

3.    A judgment that Defendants infringed Hatch's federally registered REST® trademark in violation of 15 U.S.C. § 1114 and infringed Hatch's unregistered trade dress and engaged in false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a);

4.    Entry of a permanent injunction enjoining Defendants and its officers, agents, attorneys, employees, and all those acting in privity or concert with them, and those receiving any infringing products from them, from infringing the '799 Patent, from infringing the '833 Patent, from using the REST® trademark or any confusingly similar designation in commerce, and from using Hatch's Trade Dress or any confusingly similar product configuration or overall appearance in commerce;

5.    An award of damages adequate to compensate Hatch for infringement of the '799 Patent and the '833 Patent pursuant to 35 U.S.C. § 284 and/or Defendants' profits pursuant to 35 U.S.C. § 289, as well as damages, Defendants' profits, and any enhanced damages available under 15 U.S.C. § 1117;

6.    A finding that Defendants' infringement was deliberate and willful, and that the monetary recovery awarded to Hatch be trebled pursuant to 35 U.S.C. § 284, 15 U.S.C. § 1117(a), or other applicable law;

7.      A declaration that this is an exceptional case and an award of attorneys' fees, disbursements, and costs pursuant to 35 U.S.C. § 285, 15 U.S.C. § 1117(a), or other applicable law;

8.      An order requiring Defendants, its affiliates, subsidiaries, related companies, and all those acting in concert or participation with them to:

        a)      remove from all websites any depiction of or reference to the Infringing Product;

        b)      recall and destroy (or deliver to the Court for destruction) all products and packaging consisting of, involving, or related to the Infringing Product and provide proof to the Court of the same; and

        c)      destroy (or deliver to the Court for destruction) any and all advertising, promotional, or other materials pertaining to the Infringing Product or the unauthorized use of the REST® trademark or Hatch's Trade Dress, regardless of the medium, and provide proof to the Court of the same;

9.      An order requiring Defendants to file with this Court and serve upon Hatch, within thirty (30) days after entry of any injunction, a written report under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

10.     An order requiring Defendants to account for and disgorge to Hatch all profits realized as a result of its infringement and other unlawful acts, including enhanced profits as the Court finds just under the circumstances;

11.     An award of interest and costs, including prejudgment and post-judgment interest; and

12.     Such other and further relief as this Court deems just and proper.

Complaint & Jury Demand

DATED: February 10, 2026

By:  *Christopher C. Smith*
Thomas A. Runk (SBN101306)
trunk@brookskushman.com
BROOKS KUSHMAN P.C.
515 S. Flower Street, Suite 1800
Los Angeles, CA  90071-2231
Telephone: 562-708-3520

Christopher C. Smith (SBN 238882)
csmith@brookskushman.com
**BROOKS KUSHMAN P.C.**
150 W. Second St., Suite 400N
Royal Oak, MI  48067-3846
Telephone: 248-358-4400

*Attorney for Hatch Baby, Inc.*

Complaint & Jury Demand